UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **b1BANK,** | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:24-CV-397** |
| | § | |
| | § | |
| | § | |
| **AQUILA AVIATION VENTURES,** | § | |
| **LLC, ULTRAAIR, LLC, MENTE** | § | |
| **GROUP, LLC, BRIAN E. PROCTOR,** | § | |
| **CHRISTOPHER L. ERICKSON, and** | § | |
| **DANIEL R. WHITE,** | § | |
| *Defendants.* | § | |

---

### PLAINTIFF b1BANK'S ORIGINAL COMPLAINT

Plaintiff b1BANK  ("b1") files this Complaint seeking entry of a judgment in its favor and against Defendants Aquila Aviation Ventures, LLC, UltraAir, LLC, Mente Group, LLC, Brian E. Proctor, Christopher L. Erickson, and Daniel R. White (collectively herein, the "Defendants"), jointly and severally, for breach of certain loan and security agreements, promissory notes, guaranty agreements, and related documents executed in favor of b1, for the full amount of indebtedness owed and outstanding to b1BANK by the Defendants. In support, b1 shows as follows:

### PARTIES

1.      Plaintiff b1BANNK ("b1") is a Louisiana banking corporation authorized to do business in the State of Texas, having its corporate headquarters located in Baton Rouge, Louisiana, at 500 Laurel Street and is a citizen of Louisiana.

2.      Defendant Aquila Aviation Ventures, LLC ("Aquila") is a citizen of Nebraska and Texas based on the citizenship of its members.  Aquila is a Delaware limited liability company that was previously authorized to do business in the State of Texas whose members are City Ventures Enterprises, LLC and KBP Howling Dog Partners, LLC. The members of City Ventures Enterprises, LLC are Defendant Christopher L. Erickson, a citizen of Nebraska, Defendant Daniel R. White, a citizen of Nebraska, and City Ventures Investments, LLC (whose members are Defendants Christopher L. Erickson and Daniel R. White).  KBP Howling Dog Partners LLC's sole member is Defendant Brian E. Proctor, who is a citizen of Texas.  Aquila may be served with process through its registered agent Sloan & Roberts PLLC, 5151 Belt Line Rd., Suite 1050, Dallas, Texas 75254 or upon executives or other authorized agent(s) or representative(s), wherever they may be found.

3.      Defendant UltraAir, LLC ("UltraAir") is a citizen of Nebraska and Texas based on the citizenship of its members.  UltraAir is a Nebraska limited liability company whose sole member is Defendant Aquila Aviation Ventures, LLC (whose members are identified above).  UltraAir may be served with process through its registered agent Sloan & Roberts PLLC, 5151 Belt Line Rd., Suite 1050, Dallas, Texas 75254 or upon executives or other authorized agent(s) or representative(s), wherever they may be found.

4.      Defendant Mente Group, LLC ("Mente Group") is a citizen of Nebraska and Texas based on the citizenship of its members.  Mente Group is a Texas limited liability company whose sole member is Defendant Aquila Aviation Ventures, LLC (whose members are identified above).  Mente Group may be served with process through its

registered agent Sloan & Roberts PLLC, 5151 Belt Line Rd., Suite 1050, Dallas, Texas 75254 or upon executives or other authorized agent(s) or representative(s), wherever they may be found.

5.     Defendant Brian E. Proctor ("Proctor") is a citizen of Collin County, Texas and may be served with process at 5755 Sweeney Trail, Frisco, Texas 75034 or wherever he may be found.

6.     Defendant Christopher L. Erickson ("Erickson") is a citizen of Douglas County, Nebraska and may be served with process at 4880 S. 236th Circle, Elkhorn, Nebraska 68022 or wherever he may be found.

7.     Defendant Daniel R. White ("White") is a citizen of Douglas County, Nebraska and may be served with process at 636 S. 249th Circle, Waterloo, Nebraska 68069 or wherever he may be found.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff is a citizen of the State of Louisiana and Defendants are citizens of the States of Texas, Delaware, and Nebraska. The amount in controversy exceeds $75,000.00.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391. The agreements entered into and executed by b1 and the Defendants, respectively (collectively herein, the "Parties"), which form the basis for all claims subject to and damages sought in this action were made and fully performable by their express terms in the State of Texas at 3010 Gaylord Parkway, Suite 140, Frisco, Texas, in Collin County, and require that all payments and obligations owed are to be made in Collin County, Texas, and the events

3

and omissions giving rise to the claims asserted herein occurred in Collin County, Texas, which is situated in the Eastern District of Texas. The Parties additionally agreed and consented by the terms of the agreements between them to venue being proper in this Court.

## FACTS AND BACKGROUND

### I.   *Term Loan to Aguila (Loan No. ********8376)*

10.    On or about April 14, 2022, Aquila, as borrower, and Pioneer Business Services LLC *d/b/a* Four Corners Aviation Services ("Four Corners"), Mente Group, Proctor, Erickson, and White, as guarantors, sought out and obtained from b1, as lender, a commercial loan in the original principal amount of $10,947,000.00 (the "Term Loan") as part of a term loan credit facility borrowed from b1 for the purpose of purchasing the rights, title, and interest of SB Group US, Inc., a California corporation, and certain collateral security interests pledged as security for repayment and satisfaction of the Term Loan obligations.

11.    The Term Loan is evidenced by documents and agreements entered into and executed by the Parties in connection with the Term Loan on or about April 14, 2022, as subsequently amended, modified, and/or extended from time to time, including but not limited to the following (collectively herein, the "Term Loan Documents"):

> a.  a certain *Loan and Security Agreement* dated and effective April 14, 2022, entered into and executed by and between Aguila as borrower and Four Corners, Mente Group, Proctor, Erickson, and White, as joint and several guarantors, and b1 as lender (the "Term Loan Agreement");

    b.   a certain *Promissory Note* dated and effective April 14, 2022, entered into and executed by Aguila in favor of and for the benefit of b1 (the "Term Loan Note");

    c.   a certain *Guaranty Agreement* dated and effective April 14, 2022, entered into and executed by Four Corners, Mente Group, Proctor, Erickson, and White as joint and several guarantors, in favor of and for the benefit of b1 as lender (the "Term Loan Guaranty" or "Term Loan Guaranty Agreement");

    d.   a certain *Release of Guaranty* dated and effective April 14, 2023, granted by b1 in favor of Four Corners, releasing Four Corners from its obligations pursuant to and in connection with the Term Loan Guaranty Agreement and related Term Loan Documents;

    e.   a certain *Amendment to Loan Documents* dated and effective April 14, 2023, entered into and executed by and between Aguila as borrower and Mente Group, Proctor, Erickson, and White, as joint and several guarantors (together, the "Term Loan Guarantors"), and b1;

    f.   a certain *Amendment to Loan Documents* dated and effective July 14, 2023, entered into and executed by and between Aguila, each of the Term Loan Guarantors, and b1;

    g.   a certain *Amendment to Loan Documents* dated and effective October 2, 2023, entered into and executed by and between Aguila, each of the Term Loan Guarantors, and b1;

    h.   a certain *Amendment to Loan Documents* dated and effective November 11, 2023, entered into and executed by and between Aguila, each of the Term Loan Guarantors, and b1;

    i.   a certain *Amendment to Loan Documents* dated and effective January 11, 2024, entered into and executed by and between Aguila, each of the Term Loan Guarantors, and b1.

12.    True and correct copies of each of the Term Loan Documents referenced above are attached hereto as **Exhibits 1 through 9** and incorporated fully herein by reference for all purposes.

13.     By entering into and executing the Term Loan Documents, Aguila promised and agreed to fully and timely repay and satisfy all indebtedness and obligations owed and to become owed to b1 in connection with the Term Loan pursuant to and in accordance with the terms of the Term Loan Documents, including but not limited to by timely repayment and satisfaction of all required amounts owed and to become owed under the Loan by making required monthly installment payments and payment and satisfaction of the full outstanding amount remaining unpaid under the Term Loan on the earliest of acceleration of the indebtedness obligations owed or March 1, 2024 (herein, the "Term Loan Maturity Date").

14.     The indebtedness obligations required to be timely and fully repaid and satisfied by the terms of the Term Loan Documents are set out and defined in the Term Loan Documents and include but are not limited to (collectively herein, the "Term Loan Indebtedness"): (a) the full amount of unpaid and outstanding principal advanced under the Term Loan on any date; (b) the total amount of accrued unpaid interest computed pursuant to the terms of the Term Loan Documents until the Term Loan Maturity Date; (c) the total amount of unpaid interest computed daily on a compounded basis on the outstanding principal balance as calculated by b1 in accordance with the Term Loan Documents (which may include any accrued and unpaid interest, fees or charges outstanding at the Term Loan Maturity Date) at the rate of the lesser of the maximum rate permitted by applicable law or eighteen percent (18%) from and after an Event of Default as defined in the Term Loan Documents or the Term Loan Maturity Date (the "Maturity Rate") until the total amount of indebtedness outstanding is paid and satisfied

in full; (d) the total amount of all delinquency charges or late fees incurred in connection with the Term Loan pursuant to the terms of the Term Loan Documents; (e) the total amount of all expenses, costs, and fees incurred by b1 in connection with the Term Loan, the collection and administration of all or any part of the indebtedness and obligations owed or to become owed in connection therewith, and the protection or preservation of, or realization upon, the collateral securing all or any part of such indebtedness and obligations, including all reasonable attorneys' fees and legal expenses; and (f) all other amounts set forth and provided for in the terms and conditions of the Term Loan Documents.

15.     Aguila unconditionally and absolutely promised and agreed by entering into and executing the Term Loan Documents to fully and timely repay to b1 all Term Loan Indebtedness pursuant to and in accordance with the terms set forth in the Term Loan Documents by installment payments due on a monthly basis and by a balloon payment due and owed to b1 on the Term Loan Maturity Date for the full and entire balance of Indebtedness owed and outstanding on that date pursuant to the Term Loan Documents and in connection with the Term Loan.

16.     By entering into and executing the Term Loan Guaranty Agreement and the Term Loan Documents, each of the Term Loan Guarantors individually, and jointly and severally, unconditionally and irrevocably promised and agreed to fully repay all Indebtedness owed and to become owed at any time by Aguila to b1 including but not limited to all Indebtedness owed and to become owed in connection with and pursuant to the terms of the Term Loan and the Term Loan Documents and to fully perform and

7

satisfy all obligations owed and to become owed at any time by Aguila to b1 including but not limited to all obligations owed and to become owed in connection with and pursuant to the terms of the Term Loan and the Term Loan Documents, as primary obligors of the same to b1.

17.     b1 engaged assistance of legal counsel as necessary in order to protect and preserve its rights, claims, and interests in connection with the Term Loan and certain collateral pledged as security for repayment and satisfaction of the same, and has incurred attorneys' fees, costs, and expenses, and other expenses including but not limited to for recording and records search costs, and continues to incur costs, fees, and expenses for purposes of the same, which amounts are part of the Term Loan Indebtedness owed to b1 by Aguila and by the Term Loan Guarantors under the terms and conditions of the Term Loan Documents.

18.     Aguila confirmed, stipulated, and acknowledged, and each of the Term Loan Guarantors agreed, that as of January 11, 2024, $9,797,000.00 in outstanding principal was owed and outstanding to b1 by Aguila and guaranteed by the Term Loan Guarantors pursuant to and in connection with the Term Loan as set forth in the *Amendment to Loan Documents* dated January 11, 2024.

19.     In violation of the terms and conditions of the Term Loan Documents, Aguila failed to pay and satisfy the outstanding Indebtedness due and owed to b1 on the Term Loan Maturity Date.

20.     b1 provided notice to Aguila and the Term Loan Guarantors of the default(s) pursuant to the terms and conditions of the Term Loan Documents and made

demand for payment and satisfaction to b1 of the entire outstanding Indebtedness past due and owed to b1 in connection with the Term Loan by correspondence dated April 15, 2024. A true and correct copy of the notice and demand letter is attached here and incorporated fully herein as **Exhibit 10**.

21.     Aguila failed to repay and satisfy the Indebtedness and obligations owed to b1 in connection with the Term Loan as required by the terms of the Term Loan Documents, and the Indebtedness and obligations owed to b1 by Aguila pursuant to the terms of the Term Loan Documents and in connection with the Term Loan remain unpaid and outstanding, and are past due and owed to b1 in full.

22.     Each of the Term Loan Guarantors failed to repay and satisfy the Indebtedness and obligations owed to b1 in connection with the Term Loan as required by the terms of the Term Loan Documents and Term Loan Guaranty Agreement, and the Indebtedness and obligations owed to b1 by Aguila and by the Term Loan Guarantors pursuant to the terms of the Term Loan Documents and Term Loan Guaranty Agreement and in connection with the Term Loan remain unpaid and outstanding, and are past due and owed to b1 in full.

23.     The Indebtedness owed and outstanding to b1 by Aguila and each of the Term Loan Guarantors, jointly and severally, in connection with the Term Loan and pursuant to the terms of the Term Loan Documents and Term Loan Guaranty Agreement is $9,797,000.00 as of May 6, 2024, *plus:* (i) interest accruing on the Indebtedness balance at the rate of 10.5% in the amount of $2,857.46 daily (the "Term Loan Rate") from and after May 6, 2024, until the Term Loan Indebtedness is paid and satisfied in full;

(ii) delinquency charges incurred in accordance with the terms of the Term Loan Documents from and after May 6, 2024; (iii) other amounts incurred or accruing as provided for pursuant to the terms of the Term Loan Documents; and (iv) attorneys' fees, costs and expenses incurred by b1 in connection with the Term Loan as provided in the terms and conditions of the Term Loan Documents including but not limited to in connection with this action and enforcement or collection of any judgment entered herein; and (v) interest accruing from and after entry of any judgment by this Court at the greater of the Term Loan Rate or the Term Loan Maturity Rate until the entire amount of the judgment is paid and satisfied in full; and (vi) any other amounts owed and to become owed pursuant to the Term Loan Documents, Term Loan Guaranty Agreement, in connection with the Term Loan or any collateral security pledged in connection with same, and/or as provided by any applicable law.

## II.   _Revolving Line of Credit to UltraAir (Loan No. ********4308)_

24.    On or about October 6, 2022, UltraAir, as borrower, and Aguila, Pioneer Business Services LLC _d/b/a_ Four Corners Aviation Services ("Four Corners"), Mente Group, Proctor, Erickson, and White, as guarantors, sought out and obtained from b1, as lender, a commercial loan pursuant to a revolving line of credit in the original principal amount of $2,500,000.00, subsequently increased to $3,500,000.00 by amendment entered into and executed on January 27, 2023, which was advanced by b1 and obtained by UltraAir as part of a revolving credit facility borrowed from b1 by UltraAir for use as working capital in the ordinary course of business (herein, the "LOC").

25.     The LOC is evidenced by documents and agreements entered into and executed by b1 and the Defendants in connection with the LOC on or about October 6, 2022, as subsequently amended, modified, and/or extended from time to time, including but not limited to the following (collectively herein, the "LOC Documents"):

    a.  a certain *Loan and Security Agreement* dated and effective October 6, 2022, entered into and executed by and between UltraAir as borrower and Aguila, Four Corners, Mente Group, Proctor, Erickson, and White, as joint and several guarantors, and b1 as lender (the "LOC Loan Agreement");

    b.  a certain *Promissory Note* dated and effective October 6, 2022, entered into and executed by UltraAir in favor of and for the benefit of b1 (the "LOC Note");

    c.  a certain *Guaranty Agreement* dated and effective October 6, 2022, entered into and executed by Aguila, Four Corners, Mente Group, Proctor, Erickson, and White as joint and several guarantors, in favor of and for the benefit of b1 as lender (the "LOC Guaranty" or "LOC Guaranty Agreement", and together with the Term Loan Guaranty Agreement, the "Guaranty Agreements");

    d.  a certain *Amendment to Loan Documents* dated and effective January 27, 2023, entered into and executed by and between UltraAir as borrower and Aguila, Four Corners, Mente Group, Proctor, Erickson, and White, as joint and several guarantors, and b1;

    e.  a certain *Release of Guaranty* dated and effective April 14, 2023, granted by b1 in favor of Four Corners, releasing Four Corners from its obligations pursuant to and in connection with the LOC Guaranty Agreement and related LOC Loan Documents; and

    f.  a certain *Amendment to Loan Documents* dated and effective January 26, 2024, entered into and executed by and between UltraAir as borrower, Aguila, Mente Group, Proctor, Erickson, and White, as joint and several guarantors (together, the "Term Loan Guarantors"), and b1.

26.     True and correct copies of each of the LOC Documents referenced above are attached hereto as **Exhibits 11 through 16** and incorporated fully herein by reference for all purposes.

27.     By entering into and executing the LOC Documents, UltraAir promised and agreed to fully and timely repay and satisfy all indebtedness and obligations owed and to become owed to b1 in connection with the LOC pursuant to and in accordance with the terms of the LOC Documents, including but not limited to by timely repayment and satisfaction of all required amounts owed and to become owed under the LOC by making all required payments and payment and satisfaction of the full outstanding amount remaining unpaid in connection with the LOC on the earliest of acceleration of the indebtedness obligations owed or March 26, 2024 (herein, the "LOC Maturity Date").

28.     The indebtedness obligations required to be timely and fully repaid and satisfied by the terms of the LOC Documents are set out and defined in the LOC Documents and include but are not limited to (collectively herein, the "LOC Indebtedness"): (a) the full amount of unpaid and outstanding principal advanced under the LOC on any date; (b) the total amount of accrued unpaid interest computed pursuant to the terms of the LOC Documents until acceleration or the LOC Maturity Date; (c) the total amount of unpaid interest computed daily on a compounded basis on the outstanding principal balance as calculated by b1 in accordance with the LOC Documents (which may include any accrued and unpaid interest, fees or charges outstanding at the LOC Maturity Date) at the rate of the lesser of the maximum rate permitted by applicable law or eighteen percent (18%) from and after an Event of Default as defined in the Term

Loan Documents or the LOC Maturity Date until the total amount of indebtedness outstanding is paid and satisfied in full (the "Maturity Rate"); (d) the total amount of all delinquency charges or late fees incurred in connection with the LOC pursuant to the terms of the LOC Documents; (e) the total amount of all expenses, costs, and fees incurred by b1 in connection with the LOC, the collection and administration of all or any part of the indebtedness and obligations owed or to become owed in connection therewith, and the protection or preservation of, or realization upon, the collateral securing all or any part of such indebtedness and obligations, including all reasonable attorneys' fees and legal expenses; and (f) all other amounts set forth and provided for in the terms and conditions of the LOC Documents.

29.     UltraAir unconditionally and absolutely promised and agreed by entering into and executing the LOC Documents to fully and timely repay to b1 all LOC Indebtedness pursuant to and in accordance with the terms set forth in the LOC Documents by making all required payments as set forth in the LOC Documents and timely making the balloon payment due and owed to b1 on the final LOC Maturity Date for the full and entire balance of Indebtedness owed and outstanding on that date pursuant to the LOC Documents and in connection with the LOC.

30.     By entering into and executing the LOC Guaranty Agreement and the LOC Documents, each of the LOC Guarantors individually, and jointly and severally, unconditionally and irrevocably promised and agreed to fully repay all Indebtedness owed and to become owed at any time by UltraAir to b1 including but not limited to all Indebtedness owed and to become owed in connection with and pursuant to the terms of

the LOC and the LOC Documents and to fully perform and satisfy all obligations owed and to become owed at any time by UltraAir to b1 including but not limited to all obligations owed and to become owed in connection with and pursuant to the terms of the LOC and the LOC Documents, as primary obligors of the same to b1.

31.    b1 engaged assistance of legal counsel as necessary in order to protect and preserve its rights, claims, and interests in connection with the LOC and any collateral interests pledged as security for repayment and satisfaction of the same, and has incurred attorneys' fees, costs, and expenses, and other expenses including but not limited to for recording and records search costs, and continues to incur costs, fees, and expenses for purposes of the same, which amounts are part of the LOC Indebtedness owed to b1 by UltraAir and by the LOC Guarantors under the terms and conditions of the LOC Documents.

32.    UltraAir confirmed, stipulated, and acknowledged, and each of the LOC Guarantors agreed, that as of January 26, 2024, $3,480,748.00 in outstanding principal was owed and outstanding to b1 by UltraAir and guaranteed by the LOC Guarantors pursuant to and in connection with the LOC as set forth in the *Amendment to Loan Documents* dated January 26, 2024.

33.    In violation of the terms and conditions of the LOC Documents, UltraAir failed to pay and satisfy the outstanding LOC Indebtedness due and owed to b1 on the final LOC Maturity Date.

34.    b1 provided notice to UltraAir and the LOC Guarantors of the default(s) pursuant to the terms and conditions of the LOC Documents and made demand for

payment and satisfaction to b1 of the entire outstanding Indebtedness past due and owed to b1 in connection with the LOC by correspondence dated April 15, 2024. A true and correct copy of the notice and demand letter is attached here and incorporated fully herein as **Exhibit 17**.

35.     UltraAir failed to repay and satisfy the Indebtedness and obligations owed to b1 in connection with the LOC as required by the terms of the LOC Documents, and the Indebtedness and obligations owed to b1 by UltraAir pursuant to the terms of the LOC Documents and in connection with the LOC remain unpaid and outstanding, and are past due and owed to b1 in full.

36.     Each of the LOC Guarantors failed to repay and satisfy the Indebtedness and obligations owed to b1 by UltraAir in connection with the LOC as required by the terms of the LOC Documents and LOC Guaranty Agreement, and the Indebtedness and obligations owed to b1 by UltraAir and by the LOC Guarantors pursuant to the terms of the LOC Documents and LOC Guaranty Agreement and in connection with the LOC remain unpaid and outstanding, and are past due and owed to b1 in full.

37.     The Indebtedness owed and outstanding to b1 by UltraAir and each of the LOC Guarantors, jointly and severally, in connection with the LOC and pursuant to the terms of the LOC Documents and LOC Guaranty Agreement is $3,481,215.82 as of May 6, 2024, *plus:* (i) interest accruing on the Indebtedness balance at the rate of 8.75% in the amount of $846.13 daily (the "LOC Rate") from and after May 6, 2024, until the LOC Indebtedness is paid and satisfied in full; (ii) delinquency charges incurred in accordance with the terms of the LOC Documents from and after May 6, 2024; (iii) other amounts

incurred or accruing as provided for pursuant to the terms of the LOC Documents; and (iv) attorneys' fees, costs and expenses incurred by b1 in connection with the LOC as provided in the terms and conditions of the LOC Documents including but not limited to in connection with this action and enforcement or collection of any judgment entered herein; and (v) interest accruing from and after entry of any judgment by this Court at the greater of the LOC Rate or the Maturity Rate until the entire amount of the judgment is paid and satisfied in full; and (vi) any other amounts owed and to become owed pursuant to the LOC Documents, LOC Guaranty Agreement, in connection with the LOC or any collateral security pledged in connection with same, and/or as provided by any applicable law.

## COUNT I
### Breach of Term Loan Documents Including
### Term Loan Agreement and Promissory Note

38.    All allegations and assertions of the preceding paragraphs are hereby realleged and incorporated herein by reference for all purposes.

39.    Aguila obtained the Term Loan and proceeds from b1, and Defendants Aguila, Mente Group, Proctor, Erickson, and White entered into and executed the Term Loan Documents and Term Loan Guaranty Agreement with and for the benefit of b1, and received the proceeds of the Term Loan borrowed from and advanced by b1 as provided by the terms thereof. Defendants promised to fully and timely repay and satisfy the entire Indebtedness amount owed and to become owed in accordance with the terms of the Term Loan Documents and no later than the Term Loan Maturity Date.

40. Defendant Aguila defaulted under the terms of the Term Loan Documents by failing to repay the Term Loan Indebtedness balance owed to b1 as required by the terms of the Term Loan Documents.

41. The Term Loan matured and is past due and owed to b1 in entirety, and the Indebtedness remains owed and outstanding to b1 by Aguila pursuant to the terms of the Term Loan Documents including the Term Loan Agreement and Promissory Note as amended.

42. The Term Loan matured and is past due and owed to b1 in entirety, and the Indebtedness remains owed and outstanding to b1 by Aguila pursuant to the terms of the Term Loan Documents including the Term Loan Agreement and Promissory Note as amended and by each of the Term Loan Guarantors pursuant to the terms of the Term Loan Guaranty Agreement.

43. Defendant Aguila remains in default in breach of the terms and obligations of the Term Loan Documents and its obligations owed to b1 pursuant to the terms thereof.

44. Defendants Mente Group, Proctor, Erickson, and White remain in default in breach of the terms and obligations of the Term Loan Guaranty Agreement and all obligations owed to b1 thereunder including the obligation to fully repay and satisfy the entire balance outstanding and past due owed to b1 by Aguila in connection with the Term Loan.

45. Each of the Defendants is obliged by the terms of the Term Loan Documents to fully repay and satisfy the entire balance of Term Loan Indebtedness past due, owed

and outstanding to b1 under the terms and conditions of the Term Loan Documents and
Term Loan Guaranty Agreement.

46.    b1 is entitled to have and recover a judgment in its favor and against each
of the Defendants as primary obligors, jointly and severally, for the full amount of Term
Loan Indebtedness outstanding and past due and owed to b1 under the terms of the Term
Loan Documents and Term Loan Guaranty Agreement, including but not limited to the
entire balance of Term Loan Indebtedness owed and outstanding plus interest accruing
on the same, additional delinquent charges to be incurred, and costs and expenses
incurred and to be incurred by b1 in connection with the Term Loan and obligations and
Indebtedness owed by Defendants in connection with same (including but not limited to
attorneys' fees, costs, and expenses, to be incurred in connection with this action and
enforcement and collection of any judgment entered herein and all costs of Court
incurred).

## COUNT II
**Breach of Term Loan Guaranty Agreement**

47.    All allegations and assertions of the preceding paragraphs are hereby
realleged and incorporated herein by reference for all purposes.

48.    Mente Group, Proctor, Erickson, and White each agreed by the terms of the
Term Loan Guaranty Agreement to fully repay, satisfy, and discharge all obligations
owed and to become owed by Defendant Aquila to b1, including but not limited to those
owed and to become owed at any time in connection with the Term Loan and pursuant
to the terms of the Term Loan Documents.

49.     Mente Group, Proctor, Erickson, and White have failed to pay and satisfy the Term Loan Indebtedness and obligations owed to b1 by the Term Loan Guarantors as required by the terms of the Term Loan Guaranty Agreement, which Indebtedness and obligations are past due and owed to b1 in full.

50.     Mente Group, Proctor, Erickson, and White are in default under the terms of Term Loan Guaranty Agreement, and have breached the terms of the Term Loan Guaranty Agreement by failing to comply with the terms and conditions thereof.

51.     b1 is entitled to have and recover a judgment in its favor and against Mente Group, Proctor, Erickson, and White, jointly and severally, for the full balance of Term Loan Indebtedness outstanding under the Term Loan and pursuant to the terms and conditions of the Term Loan Documents, as well as the amounts owed and to become owed pursuant to the terms of the Term Loan Guaranty Agreement including the full balance of Term Loan Indebtedness outstanding and past due and owed and to become owed under the terms of the Term Loan Documents, the amounts owed and to become owed pursuant to the terms of the Term Loan Guaranty Agreement, and all fees, costs, and expenses as further provided by the terms thereof (including but not limited to costs of Court incurred in connection with this action).

**COUNT III**
**Breach of LOC Documents Including**
**LOC Loan Agreement and Promissory Note**

52.     All allegations and assertions of the preceding paragraphs are hereby realleged and incorporated herein by reference for all purposes.

53.     Defendant UltraAir obtained the advances under the LOC from b1, and UltraAir and Defendants Aguila, Mente Group, Proctor, Erickson, and White entered into and executed the LOC Documents and Mente Group, Proctor, Erickson, and White entered into and executed the LOC Guaranty Agreement with and for the benefit of b1, and UltraAir received the proceeds of the LOC advances borrowed from and advanced by b1 as provided by the terms thereof. Defendants promised to fully and timely repay and satisfy the entire Indebtedness amount owed and to become owed in accordance with the terms of the LOC Documents and no later than the final LOC Maturity Date.

54.     Defendant UltraAir defaulted under the terms of the LOC Documents including the LOC Loan Agreement and Promissory Note as subsequently amended by failing to repay the LOC Indebtedness balance owed to b1 as required by the terms of the LOC Documents.

55.     The LOC matured and is past due and owed to b1 in entirety, and the Indebtedness remains owed and outstanding to b1 by UltraAir pursuant to the terms of the LOC Documents including the LOC Loan Agreement and Promissory Note as amended.

56.     The LOC matured according to its terms and is past due and owed to b1 in entirety, and the Indebtedness remains owed and outstanding to b1 by UltraAir pursuant to the terms of the LOC Documents including the LOC Loan Agreement and Promissory Note as amended and by each of the LOC Guarantors pursuant to the terms of the LOC Guaranty Agreement.

57.     Defendant UltraAir remains in default in breach of the terms and obligations of the LOC Documents and its obligations owed to b1 pursuant to the terms thereof.

58.     Defendants Aguila, Mente Group, Proctor, Erickson, and White remain in default in breach of the terms and obligations of the LOC Guaranty Agreement and all obligations owed to b1 thereunder including the obligation to fully repay and satisfy the entire balance outstanding and past due and owed to b1 by UltraAir in connection with the LOC.

59.     Each of the Defendants is obliged by the terms of the LOC Documents to fully repay and satisfy the entire balance of the LOC Indebtedness which is past due, owed and outstanding to b1 under the terms and conditions of the LOC Documents and LOC Guaranty Agreement.

60.     b1 is entitled to have and recover a judgment in its favor and against each of the Defendants as primary obligors, jointly and severally, for the full amount of LOC Indebtedness outstanding and past due and owed to b1 under the terms of the LOC Documents and LOC Guaranty Agreement, including but not limited to the entire balance of LOC Indebtedness owed and outstanding plus interest accruing on the same, additional delinquent charges to be incurred, and costs and expenses incurred and to be incurred by b1 in connection with the LOC and obligations and Indebtedness owed by Defendants in connection with same (including but not limited to attorneys' fees, costs, and expenses, to be incurred in connection with this action and enforcement and collection of any judgment entered herein and all costs of Court incurred).

## COUNT IV
### Breach of LOC Guaranty Agreement

61.     All allegations and assertions of the preceding paragraphs are hereby realleged and incorporated herein by reference for all purposes.

62.     Aguila, Mente Group, Proctor, Erickson, and White each agreed by the terms of the LOC Guaranty Agreement to fully repay, satisfy, and discharge all obligations owed and to become owed by Defendant UltraAir to b1, including but not limited to those owed and to become owed at any time in connection with the LOC and pursuant to the terms of the LOC Documents.

63.     Aguila, Mente Group, Proctor, Erickson, and White have failed to pay and satisfy the LOC Indebtedness and obligations owed to b1 by the LOC Guarantors as required by the terms of the LOC Guaranty Agreement, which Indebtedness and obligations are past due and owed to b1 in full.

64.     Aguila, Mente Group, Proctor, Erickson, and White are in default under the terms of LOC Guaranty Agreement, and have breached the terms of the LOC Guaranty Agreement by failing to comply with the terms and conditions thereof.

65.     b1 is entitled to have and recover a judgment in its favor and against Aguila, Mente Group, Proctor, Erickson, and White, jointly and severally, for the full balance of LOC Indebtedness outstanding under the LOC and pursuant to the terms and conditions of the LOC Documents, as well as the amounts owed and to become owed pursuant to the terms of the LOC Guaranty Agreement including the full balance of LOC Indebtedness outstanding and past due and owed and to become owed under the terms

of the LOC Documents, the amounts owed and to become owed pursuant to the terms of the LOC Guaranty Agreement, and all fees, costs, and expenses as further provided by the terms thereof (including but not limited to costs of Court incurred in connection with this action).

**COUNT V**
**Attorneys' Fees**

66.      By virtue of Defendants' failures to pay the amounts due and owed to b1 under the terms of the Term Loan Documents and the LOC Documents (together, the "Loan Documents") and under the terms of the Guaranty Agreements, and the Defendants' continued breach of each and all of the same, b1 was required to engage the services of attorneys to prepare for and bring this action, and b1 reasonably expects to incur attorneys' fees, costs and expenses through the trial of this cause and enforcement and collection of any judgment entered as a result thereof.

67.      b1 seeks compensation for all attorneys' fees, costs and expenses incurred in connection with this action and the enforcement and collection of any judgment entered herein.

**RELIEF REQUESTED**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff b1Bank respectfully requests entry of a judgment by this Court in its favor and:

A.      against Defendant Aguila for the full amount of Term Loan Indebtedness owed and outstanding to b1 in connection with the Term Loan which is $9,797,000.00 as of May 6, 2024, *plus:* (i) interest accruing on the Indebtedness balance at the rate of 10.5%

23

in the amount of $2,857.46 daily from and after May 6, 2024; (ii) delinquency charges incurred in accordance with the terms of the Term Loan Documents from and after May 6, 2024; (iii) other amounts incurred or accruing as provided for pursuant to the terms of the Term Loan Documents; and (iv) attorneys' fees, costs and expenses incurred by b1 in connection with the Term Loan including but not limited to in connection with this action and enforcement or collection of any judgment entered herein; and (v) interest accruing from and after entry of any judgment by this Court at the greater of the Term Loan Rate of 10.5% or the Term Loan Maturity Rate of 18% until the entire amount of the judgment is paid and satisfied in full; and (vi) any other amounts owed and to become owed pursuant to the terms of the Term Loan Documents;

B.      against Defendants Mente Group, Proctor, Erickson, and White, jointly and severally, for the full amount of Term Loan Indebtedness owed and outstanding to b1 in connection with the Term Loan under the terms of the Term Loan Guaranty Agreement which is $9,797,000.00 as of May 6, 2024, *plus:* (i) interest accruing on the Indebtedness balance at the rate of 10.5% in the amount of $2,857.46 daily from and after May 6, 2024; (ii) delinquency charges incurred from and after May 6, 2024; (iii) other amounts incurred or accruing as provided for pursuant to the terms of the Term Loan Documents and/or Term Loan Guaranty Agreement; and (iv) attorneys' fees, costs and expenses incurred by b1 in connection with the Term Loan and/or Term Loan Guaranty Agreement including but not limited to in connection with this action and enforcement or collection of any judgment entered herein; and (v) interest accruing from and after entry of any judgment by this Court at the greater of the Term Loan Rate of 10.5% or the Term Loan Maturity

Rate of 18% until the entire amount of the judgment is paid and satisfied in full; and (vi) any other amounts owed and to become owed pursuant to the terms of the Term Loan Documents and/or Term Loan Guaranty Agreement;

C. against Defendant UltraAir for the full amount of LOC Indebtedness owed and outstanding to b1 in connection with the LOC which is $3,481,215.82 as of May 6, 2024, *plus:* (i) interest accruing on the Indebtedness balance at the rate of 8.75% in the amount of $846.13 daily (the "LOC Rate") from and after May 6, 2024; (ii) delinquency charges incurred in accordance with the terms of the LOC Documents from and after May 6, 2024; (iii) other amounts incurred or accruing as provided for pursuant to the terms of the LOC Documents; and (iv) attorneys' fees, costs and expenses incurred by b1 in connection with the LOC including but not limited to in connection with this action and enforcement or collection of any judgment entered herein; and (v) interest accruing from and after entry of any judgment by this Court at the greater of the LOC Rate of 8.75% or the LOC Maturity Rate of 18% until the entire amount of the judgment is paid and satisfied in full; and (vi) any other amounts owed and to become owed pursuant to the terms of the LOC Documents;

D. against Defendants Aguila, Mente Group, Proctor, Erickson, and White, jointly and severally, for the full amount of LOC Indebtedness owed and outstanding to b1 in connection with the LOC under the terms of the LOC Guaranty Agreement which is $3,481,215.82 as of May 6, 2024, *plus:* (i) interest accruing on the Indebtedness balance at the rate of 8.75% in the amount of $846.13 daily from and after May 6, 2024; (ii) delinquency charges incurred from and after May 6, 2024; (iii) other amounts incurred

or accruing as provided for pursuant to the terms of the LOC Documents and/or LOC Guaranty Agreement; and (iv) attorneys' fees, costs and expenses incurred by b1 in connection with the LOC and/or LOC Guaranty Agreement including but not limited to in connection with this action and enforcement or collection of any judgment entered herein; and (v) interest accruing from and after entry of any judgment by this Court at the greater of the LOC Rate of 8.75% or the Maturity Rate of 18% until the entire amount of the judgment is paid and satisfied in full; and (vi) any other amounts owed and to become owed pursuant to the terms of the LOC Documents and/or LOC Guaranty Agreement; and

E.      for all such other and further general, legal and equitable relief to which b1Bank may be entitled.

Respectfully submitted,

   /s/ Blake A. Bailey
BLAKE A. BAILEY
State Bar No. 01514700
PHELPS DUNBAR LLP
2102 E. State Hwy. 114, Suite 207
Southlake, Texas 76092-7626
blake.bailey@phelps.com
(817) 305-0332 (phone)
(817) 488-3214 (facsimile)

**Attorneys for b1BANK**

PD.45307841.1